STATE OF CONNECTICUT *v.* DANIEL VINAL, JR. (11055)

STATE OF CONNECTICUT *v.* JAMES AVIS (11062)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued December 4, 1985—decision released February 18, 1986

*F. Mac Buckley,* with whom, on the brief, was *Susan K. Smith,* for the appellant (defendant Vinal).

*Temmy Ann Pieszak,* assistant public defender, with whom were *Joette Katz,* public defender, and, on the brief, *Jacob Coore* and *Richard Joselson,* legal interns, for the appellant (defendant Avis).

*Carl Schuman,* assistant state's attorney, with whom, on the brief, were *Dennis A. Santore,* state's attorney, and *Elizabeth Fitzpatrick,* law student intern, for the appellee (state).

PETERS, C. J. The dispositive issue in each of these appeals is whether the trial court erred in refusing to sever the joint trial of the two defendants. One defend-

ant, Daniel Vinal, Jr., was charged with murder in violation of General Statutes § 53a-54a.[1] The other defendant, James Avis, was charged with felony murder in violation of General Statutes § 53a-54c.[2] After a joint trial, the trial court accepted jury verdicts finding both defendants guilty as charged. The defendants appeal from these judgments.

---

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

[2] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

The jury could reasonably have found the following facts concerning the incident that gave rise to the charges. Early on the morning of October 8, 1978, the defendants were together in a Torrington bar where they saw the victim. At approximately 5 a.m., the victim left the bar and drove toward Litchfield. The defendants departed immediately thereafter and followed the victim in an automobile driven by Avis. In Litchfield, the defendants forced the victim to the side of the road. They stopped their car nearby, got out, and approached the victim's car. While the victim remained in the driver's seat of his car, Avis attempted to take his wallet from him. When the victim resisted, Vinal shot him. Avis then took the wallet and the defendants fled. The victim died of his gunshot wound.

Later that day, state police officers questioned Vinal and Avis about the victim's death but made no arrests. After his interview, Avis left the state. Vinal, who remained in Connecticut, was arrested on October 24, 1978, and charged with having murdered the victim. In December of 1978, Vinal, his attorney, and his investigator traveled to New Hampshire to speak with Avis whom they had located there. After several meetings, Avis prepared, in the presence of Vinal's investigator, a written confession in which he admitted that he had shot and robbed the victim and that Vinal had been unconscious during the incident. When Vinal returned to Connecticut, he submitted the confession to the Connecticut state police who immediately obtained a warrant for Avis's arrest. In June, 1980, police in Seattle, Washington, arrested Avis and returned him to Connecticut where he was then charged with felony murder. The defendants were tried together despite numerous motions by each defendant for severance.

On appeal, both defendants claim that the trial court erred in failing to sever the two cases. Avis also contends that the trial court should have suppressed his

written confession.[3] Vinal claims that the trial court should have dismissed his indictment and that the state presented insufficient evidence to support his murder conviction.

## I

Both Avis and Vinal argue that the trial court committed harmful error by requiring that they be tried together. We agree.

The rules that govern motions for separate trials are well established in this state. When two or more criminal defendants are scheduled to be tried together and one or more moves for severance, separate trials "will be ordered where the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded." *State* v. *Haskins,* 188 Conn. 432, 450, 450 A.2d 828 (1982); *State* v. *DeWitt,* 177 Conn. 637, 644, 419 A.2d 861 (1979); *State* v. *Varricchio,* 176 Conn. 445, 447–48, 408 A.2d 239 (1979); *State* v. *McLucas,* 172 Conn. 542, 559, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977); *State* v. *Holup,* 167 Conn. 240, 245, 355 A.2d 119 (1974); *State* v. *Klein,* 97 Conn. 321, 324, 116 A. 596 (1922); *State* v. *Castelli,* 92 Conn. 58, 63, 101 A. 476 (1917); *State* v. *Brauneis,* 84 Conn. 222, 226, 79 A. 70 (1911). " '[T]he phrase "prejudicial to the rights of [one or more of the accused]" means something more than that a joint trial will probably be less advantageous to the accused than separate trials.' " *State* v. *Haskins,* supra, 450; *State*

---

[3] Avis also claims that the trial court erred in allowing the state to amend the bill of particulars against Avis during trial and in permitting the state to introduce evidence against Vinal that was highly prejudicial to Avis. In light of our disposition of this case, we need not consider these issues.

v. *DeWitt,* supra, 647–48; *State* v. *McCarthy,* 130 Conn. 101, 103, 31 A.2d 921 (1943). The trial court enjoys wide latitude in applying this standard. The joint trial of defendants who are charged with crimes that arise from a single incident often benefits the defendants as well as the judicial system.[4] On appeal, we will reverse a trial court's ruling on joinder only where the trial court commits an abuse of discretion that results in manifest prejudice to one or more of the defendants. See, e.g., *United States* v. *Carpentier,* 689 F.2d 21, 27–28 (2d Cir. 1982), cert. denied, 459 U.S. 1108, 103 S. Ct. 735, 74 L. Ed. 2d 957 (1983); *United States* v. *Werner,* 620 F.2d 922, 928 (2d Cir. 1980); *United States* v. *Crawford,* 581 F.2d 489, 491 (5th Cir. 1978); *United States* v. *Robinson,* 432 F.2d 1348, 1351 (D.C. Cir. 1970).

Vinal and Avis argue that the trial court should have granted their motions for severance because their defenses were fundamentally antagonistic.[5] To decide whether severance was necessary, we must scrutinize the strategies employed by each defendant at trial and determine, in light of the trial court's ongoing duty to monitor the fairness of the joint trial, whether conflict between the defendants tainted the proceeding. Such an inquiry in this case reveals that the defendants' defenses at trial were fundamentally incompatible and

[4] The Court of Appeals for the Ninth Circuit has observed that joinder of defendants "expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." *Parker* v. *United States,* 404 F.2d 1193, 1196 (9th Cir. 1968); see also *United States* v. *Robinson,* 432 F.2d 1348, 1351 (D.C. Cir. 1970).

[5] Vinal claims alternatively that the trial court should have granted his motions for severance because, at the joint trial, the state introduced his codefendant's confession into evidence and thereby violated Vinal's sixth amendment right to confrontation. See *Bruton* v. *United States,* 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). Our holding on the issue of antagonism between the defendants obviates the need for us to consider this claim.

that the trial court abused its discretion in trying the defendants together. The state, in its bills of particulars, alleged that either Vinal or Avis had shot the victim.[6] At trial, Vinal claimed that Avis had killed the victim. Avis defended by blaming Vinal for the murder. Each defendant introduced evidence that incriminated the other. Each attacked evidence that tended to exonerate the other. During their closing arguments, each vigorously sought to convince the jury that the other alone had killed the victim.

Central to the conflict between the defendants was Avis's written confession in which he admitted that he had killed the victim and that Vinal had not participated in the crime. The confession was one of the few pieces of evidence at trial that directly suggested Vinal's innocence and Avis's guilt. Although it was the state that introduced the confession into evidence, Vinal adopted it as the centerpiece of his defense, claiming that it created an undeniable source of doubt about his culpability that precluded a finding of guilty. Avis, on the other hand, devoted much of his defense to challenging the credibility of the confession. His attorney claimed during final argument that Avis had falsely assumed responsibility for the murder as a ploy to extricate Vinal. Avis's attorney explained that, at the time his client confessed, Vinal had already been charged with murder and Avis believed that he could safely claim guilt because he was beyond the reach of Connecticut authorities while he was living in another state. Avis's attorney also brought to light through cross-examination dubious circumstances surrounding Avis's decision to confess, implying that Vinal and his representatives had tricked Avis into confessing to a crime

[6] The state's original bill of particulars accused Avis of robbing the victim and Vinal of killing the victim in the course of the robbery. During trial, the state amended the bill of particulars against Avis. The amended bill claimed that either Vinal or Avis had killed the victim.

that he had not committed. Avis's attorney suggested further that Avis was not the true author of the confession, claiming that Avis's vocabulary did not contain several words that appeared in the confession and that the confession was not written in the style of a man of Avis's verbal ability. Vinal's attorney did his best to refute Avis's attacks on the confession. During direct examination of his own witnesses, and even during cross-examination of the state's witnesses, Vinal's attorney continually sought to establish the credibility of the confession.

Each defendant also employed various other tactics designed to shift blame for the crime to his codefendant. For example, Vinal introduced evidence of Avis's flight from the state after the murder and of Avis's use of various names during the months following the murder, alleging that the evidence was indicative of Avis's consciousness of guilt. During final argument, Vinal's attorney suggested that Avis had had a financial motive to kill the victim and reminded the jury that Avis had known the victim and had talked with him several hours before the murder. Avis's attorney emphasized in his closing argument the existence of a long list of evidence that implicated Vinal in the murder.

In light of this record we must conclude that Avis and Vinal should have been tried separately. The trial court implied, in its memorandum of decision denying the defendants' motions to sever, that severance due to antagonistic defenses is necessary only when codefendants testify against each other at trial. Our case law supports no such proposition. See *State* v. *Gordon*, 170 Conn. 189, 365 A.2d 1056 (1976); *State* v. *Holup*, supra. The state argues that the joint trial prejudiced neither defendant because the trial court admitted no evidence that would have been inadmissible against either defendant in separate trials and because neither defendant raised arguments detrimental to his code-

fendant that would not have been available to the state at separate trials. Defendants who offer fundamentally incompatible defenses at a joint trial need not, however, make showings of such prejudice to establish the substantial injustice necessary to support a finding of error. When, as in this case, the jury can reasonably accept the core of the defense offered by either defendant only if it rejects the core of the defense offered by his codefendant, the defenses are sufficiently antagonistic to mandate separate trials. See *State* v. *Gordon,* supra; *State* v. *Holup,* supra; see also *United States* v. *Berkowitz,* 662 F.2d 1127 (5th Cir. 1981). If defendants are tried jointly in this context, ''a substantial possibility exists 'that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.' *United States* v. *Eastwood,* 489 F.2d 818, 822 n.5 (5th Cir. 1973) (quoting *United States* v. *Robinson,* 432 F.2d 1348, 1351 (D.C. Cir. 1970)).'' *United States* v. *Berkowitz,* supra, 1134. Moreover, even where one defendant is found not guilty, it becomes likely under these circumstances that the conviction of the losing defendant is more a result of his codefendant's success in defending himself than it is a product of the state's satisfaction of its constitutional duty to prove the accused guilty beyond a reasonable doubt. In this case, both Avis and Vinal, out of necessity, sought to blame each other for the victim's death and constantly fought to frustrate each other's attempt to create doubt in the minds of the jurors. The trial court abused its discretion by holding a joint trial. We order that Vinal and Avis be retried separately.

## II

Because we find harmful error in the trial court's failure to grant the defendants' motions for severance, we need consider only those additional claims asserted by the defendants that are likely to arise again at retrial

and those which, if resolved in favor of either defendant, would result in his acquittal.

Avis raises only one additional issue that we must consider on appeal. He claims that the trial court should have refused to admit his written confession into evidence because Vinal's attorney had obtained the confession improperly. According to Avis, Vinal's attorney violated Disciplinary Rule 7-104 (A) (2) of the Canons of the Code of Professional Responsibility by persuading Avis to confess in 1978. Disciplinary Rule 7-104 (A) (2) requires that "[d]uring the course of his represention of a client a lawyer shall not . . . [g]ive advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client." Avis maintains that evidence obtained in violation of Disciplinary Rule 7-104 (A) (2) is inadmissible and that therefore the trial court erred. Because Avis did not raise this claim at trial, we do not review its merits on appeal.

This court reaches the merits of issues not raised below only where the trial court has committed plain error; Practice Book § 3063; where "a new constitutional right not readily foreseeable has arisen between the time of trial and appeal"; *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); or where "the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." Id.; see *State* v. *Preyer,* 198 Conn. 190, 502 A.2d 858 (1985). Avis concedes that his claim implicates no newly recognized constitutional right and that it does not involve the denial of a fundamental constitutional right and a fair trial. Instead, he urges us to hold that the trial court's failure to exclude the confession was plain error. We decline to so hold.

Practice Book § 3063 permits us "in the interests of justice [to] notice plain error not brought to the attention of the trial court." We invoke this power only in extraordinary circumstances "where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). For example, we have found plain error where a trial court ignored a controlling statute that the legislature enacted to effectuate a fundamental right; *State* v. *Burke,* 182 Conn. 330, 331–32, 438 A.2d 93 (1980); *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 609, 436 A.2d 1259 (1980); and where the trial court failed to apply an analogous procedural rule. *State* v. *Pina,* 185 Conn. 473, 482, 440 A.2d 962 (1981).

We cannot in this case characterize as plain error the trial court's failure to announce, sua sponte, that evidence is inadmissible when it has been obtained in violation of a disciplinary rule of professional responsibility. Avis has cited no precedent for such a treatment of Disciplinary Rule 7-104 (A) (2) in this or any other jurisdiction and we know of none. It would be unreasonable to expect the trial court to make any ruling on this issue without a request from one of the parties. Moreover, because Avis did not raise this claim at trial, the record on appeal is inadequate for us to determine whether Vinal's attorney violated Disciplinary Rule 7-104 (A) (2) at all.[7] We do not know, for example, whether the attorney in fact gave Avis professional advice nor whether the conduct of the attorney's investigator was attributable to the attorney for the pur-

---

[7] In contrast to the claim he raises on appeal, Avis argued at trial that Vinal's attorney also represented him at the time he confessed and that, therefore, the attorney-client privilege rendered the confession inadmissible. The trial court found that no attorney-client privilege existed. Avis does not challenge this finding on appeal.

poses of this rule. Avis remains free to pursue this claim at retrial. We do not review it here.

## III

Vinal raises three additional issues that we must consider. He claims that the trial court erred in failing: (1) to dismiss his indictment; (2) to acquit him after the state introduced evidence that exonerated him; and (3) to find that the state failed to prove that he possessed the requisite intent to murder. We find error in none of these claims.

## A

Vinal argues that the trial court should have dismissed his indictment because the court had earlier failed to allow the grand jury that indicted him to consider Avis's confession.[8] During the grand jury proceedings, Vinal had sought to make the confession available to the grand jurors, but the trial court ruled that it was hearsay and refused to allow it before the grand jury. The state has since conceded that the confession was admissible as a statement against penal interest and that it was erroneously kept from the grand jury. On appeal, Vinal claims that by refusing to give the grand jury access to the confession, the state failed to satisfy its obligation to "present the grand jury with any substantial evidence that would negate the accused's guilt, that is evidence which 'might reasonably be expected to lead the jury not to indict.'" *State* v. *Couture,* 194 Conn. 530, 557, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985), quoting *United States* v. *Ciambrone,* 601 F.2d 616, 622 (2d Cir. 1979). Because of this, he contends, the trial court committed harmful error by denying his motion to dismiss his indictment.

---

[8] In his brief, Vinal contends that the grand jury proceeding that resulted in his indictment contained several other flaws. At oral argument, Vinal conceded that this court may not review these issues on appeal.

We do not review this claim because to do so we would have to consult the transcript of the proceedings of the grand jury. While the record permits us to determine the exculpatory nature of the Avis confession, we would have to look to the other evidence considered by the grand jury in order to decide whether the admission of the confession would have altered the grand jury's finding of probable cause to indict.[9] Such an inquiry necessarily would entail a review of the grand jury transcript. Under General Statutes § 54-45a (b),[10] however, a grand jury transcript may only be used, in subsequent proceedings against an accused, to challenge the credibility of witnesses and to prove perjury. Our use of the transcript in this case would fall within neither authorized category. Because appellants may not prevail on claims of error that depend upon the unauthorized use of a grand jury transcript, we consider this claim no further.[11] *State* v. *Morrill,* 197 Conn.

---

[9] We note that the jury at trial heard the Avis confession and nevertheless found that the evidence proved beyond a reasonable doubt that Vinal was guilty of murder.

[10] "[General Statutes] Sec. 54-45a. RECORD OF GRAND JURY PROCEEDINGS. TRANSCRIPTS. (a) In any grand jury proceeding ordered pursuant to the provisions of section 54-45, the official stenographer of the superior court or his assistant shall make a record of the proceedings excluding the deliberations, which shall be confidential and filed with the court. Access to the transcript shall be available only to the prosecutorial official or any person accused of crime as a result of the grand jury investigation or the accused person's attorney. The prosecutorial official or the person accused of a crime as a result of such grand jury investigation or the accused person's attorney may obtain a copy of the transcript by paying for it.

"(b) The transcript of such proceedings may not be used as evidence in any proceeding against the accused except for the purpose of impeaching a witness, attacking the credibility of a witness or proving inconsistent statements of a witness. The transcript may also be used as evidence in a prosecution for perjury committed by a witness while giving such testimony." ·

[11] In November, 1982, the state constitution was amended to eliminate the requirement that a grand jury indict an accused before he is tried for any crime punishable by death or life imprisonment. The state constitution now requires that probable cause for such crimes be established at a hearing. See Conn. Const., art. I, § 8, and art. XVII.

507, 498 A.2d 76 (1985); *State* v. *Couture,* supra, 554–55; *State* v. *Canady,* 187 Conn. 281, 287, 445 A.2d 895 (1982).

## B

Vinal next claims that the trial court should have granted his motion for acquittal of the murder charge because the state introduced Avis's written confession into evidence. Vinal argues that because the state was bound by the content of the evidence it presented, and because Avis stated in the confession that Vinal did not participate in the murder of the victim, the state's introduction of the confession rendered its case-in-chief inadequate to support his conviction of murder. We disagree.

The state's use of the confession at trial did not preclude it from proving that Vinal had killed the victim. In Connecticut, the proponent of evidence vouches for the credibility of the evidence he presents and may directly impeach that evidence only under certain specified circumstances. See *State* v. *Mitchell,* 169 Conn. 161, 164–65, 362 A.2d 808 (1975); *Delfino* v. *Warners Motor Express,* 142 Conn. 301, 307, 114 A.2d 205 (1955); *Schmeltz* v. *Tracy,* 119 Conn. 492, 498, 177 A. 520 (1935). The proponent, however, remains free to introduce contradictory evidence and ask the jury to accept arguments that rely on that evidence. See *Weiner* v. *Loew's Enterprises, Inc.,* 120 Conn. 581, 584, 181 A. 921 (1935); *State* v. *Guilfoyle,* 109 Conn. 124, 133, 145 A. 761 (1929). In this case, the state was not bound by Avis's assertion that Vinal remained unconscious throughout the entire incident.

In light of our holding, Vinal's argument becomes a simple challenge to the sufficiency of the evidence supporting the jury's conclusion that he killed the victim. In reviewing such a claim, we construe the evidence presented in the light most favorable to sustaining the

verdict; *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985); *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); and then determine whether " 'the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' " *State* v. *Braxton,* supra, quoting *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). We have reviewed the record and conclude that the state introduced sufficient physical and testimonial evidence to support the jury's conclusion in spite of the Avis confession.

## C

The final issue raised by Vinal also involves the sufficiency of the evidence. Vinal contends that the state failed to prove that he was capable of forming the specific intent to commit murder[12] on the morning of the victim's death because he was intoxicated. In support of this claim he points out that all of the state's witnesses who saw him during the hours preceding the murder testified that he was visibly intoxicated. Because the state produced no witnesses who testified to his sobriety, the defendant argues that the state failed to meet its burden of proving that Vinal possessed the requisite intent to kill the victim. We disagree.

Vinal's argument erroneously assumes that intoxication automatically negates intent. A criminal defendant's intoxication is relevant to the determination of his capacity to form a specific intent to commit a crime; see *State* v. *D'Antuono,* 186 Conn. 414, 423, 441 A.2d 846 (1982); see also General Statutes § 53a-7;[13] but it

---

[12] See footnote 1, supra.

[13] "[General Statutes] Sec. 53a-7. EFFECT OF INTOXICATION. Intoxication shall not be a defense to a criminal charge, but in any prosecution for an

is not dispositive of the issue. It is for the jury to decide, after weighing all the evidence adduced at trial, whether a criminal defendant's intoxication rendered him incapable of forming the intent required to commit the crime with which he is charged. See *State* v. *Smith,* 185 Conn. 63, 70 n.7, 441 A.2d 84 (1981). In this case, the witnesses testified that Vinal had been drinking and that he seemed intoxicated. Nothing in their testimony required that the jury find that Vinal lacked the intent to kill. This was merely one permissible conclusion that the jury could reasonably have reached after considering the testimony. Its verdict indicates that it found that Vinal's intoxication had not rendered him incapable of forming the intent to kill the victim. Viewing the evidence in the light most favorable to sustaining the jury's verdict, we find no basis for disturbing its conclusion. See *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985); *State* v. *Stepney,* supra; *State* v. *Braxton,* supra.

There is error, the judgments are set aside and the cases are remanded for separate trials.

In this opinion the other judges concurred.

---

offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged, provided when recklessness or criminal negligence is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."