219 N.J. Super. 412 (1987)
530 A.2d 402
STATE OF NEW JERSEY, PLAINTIFF,
v.
JAMES BROWN AND RONALD EMM, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided June 4, 1987.
*413 Simon L. Rosenbach for plaintiff (Alan A. Rockoff, Middlesex County Prosecutor, attorney).
Barry T. Albin, of counsel and on the brief, for defendant James Brown (Wilentz, Goldman & Spitzer, attorneys), Eric John Marcy, on the brief.
*414 William G. Brigiani for defendant Ronald Emm (Brigiani, Gelzer, Cohen & Schneider, attorneys).
HOFFMAN, J.S.C.
This is a motion by defendants James Brown and Ronald Emm for severance brought pursuant to R. 3:15-2(b). Defendants are jointly charged in a one-count indictment charging death by auto arising from an incident which occurred on the evening of September 23, 1985.
The facts as alleged by the State are as follows: At approximately 7:52 p.m. on the above date, defendants, while travelling north on Route 34, interrupted a game of "cat and mouse" to pause for a traffic light at the intersection of Morristown Road in Old Bridge Township. It was already dark and a light rain was falling steadily. Defendants, strangers to one another, resumed their deadly game when the light changed, cutting one another off, fighting for the lane and forcing each other into the lane of oncoming traffic. The "lead" changed more than once as the game continued for over two miles. It ended with the death of Frank Dimitri who was driving south on Route 34, the innocent victim of a head-on collision with the vehicle driven by defendant Brown.
Both Brown and Emm argue that since their respective defenses will rest entirely on the culpability of the other, such defenses are both antagonistic and mutually exclusive, requiring severance. I disagree.
In order to properly join defendants, each must be charged with participation in a transaction which is identical to that in which the other defendant participated. State v. McMahon, 183 N.J. Super. 97, 99 (Law Div. 1981); State v. Krope, 123 N.J. Super. 413 (Law Div. 1973). R. 3:15-2(b) provides for the severance of codefendants where it appears to the court "that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses or of defendants in an indictment or accusation." It is axiomatic that the grant or denial of a *415 motion for severance is entrusted to the sound discretion of the trial court. R. 3:15-2(b); State v. Manney, 26 N.J. 362, 368 (1958); State v. Whipple, 156 N.J. Super. 46, 51 (App.Div. 1978). In deciding whether to grant a severance the trial court must balance the possible prejudice to defendants against the government's interest in judicial economy and must consider the ways in which it can lessen the prejudice by other means. State v. Coleman, 46 N.J. 16 (1965), cert. den. 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966); State v. Manney, 26 N.J. 362. It has been recognized that where a significant portion of evidence to be adduced at a joint trial is admissible only as to one defendant the probability of harm to the other may be so great that the trial judge should as a matter of fair practice, exercise his discretion in favor of the severance. State v. Bellucci, 165 N.J. Super. 294, 300 (App.Div. 1979). There is, of course, no right to a severance merely because defendant believes he would have a better chance of acquittal were he not required to stand trial with his codefendant. State v. Morales, 138 N.J. Super. 225 (App.Div. 1975). If, by proper instructions and charges to the jury, the separate status of codefendants can be maintained, the "danger by association" which inheres in all joint trials is effectively overcome.[1]State v. Freeman, 64 N.J. 66, 68 (1973).
Defendants present only one New Jersey case in support of their argument that under the instant circumstances a severance is required. In State v. Pickles, 46 N.J. 542 (1966), one of the questions considered by our State Supreme Court was the fundamental fairness of jointly trying codefendants Mr. and Mrs. Pickles on charges of statutory child neglect, and Mrs. Pickles on a charge of manslaughter. In reviewing the "respective *416 interests and defenses" of the codefendants the Court concluded that Mr. Pickles did not receive a fair trial since his only viable defense was to cast all blame upon his wife for the death of their son. Id. at 567.[2] Defendants herein analogize their position to that of Mr. Pickles. The case, however, is clearly distinguishable for two reasons. In Pickles the jury witnessed the spectacle of a husband "attempting to exonerate himself at the expense of his wife." Ibid. As the Court stated, "the notion that a jury might react unfavorably" to such a scene "cannot be ignored." Ibid. In contrast, defendants herein have no special relationship which might inhibit a vigorous defense by both parties, or which might prejudice the jury against them as a result. Moreover, defendants herein are to be tried on precisely the same charges. The great disparity of charges manifest in Pickles is simply not present here.
Defendants also advance several cases from our sister state and federal jurisdictions as authoritative. Of particular interest is State v. Vinal, 198 Conn. 644, 504 A.2d 1364 (Sup.Ct. 1986), where the trial court's refusal to sever the joint trial of codefendants indicted for murder and felony-murder respectively was found to constitute reversible error. Central to the conflict in Vinal was a written confession by codefendant Avis in which he stated that he alone shot and killed the victim while Vinal was unconscious. Although the state introduced the confession into evidence, Vinal adopted it as the centerpiece of his defense. 504 A.2d at 1367. Notably, the state alleged that either Vinal or Avis had shot the victim. As a result each vigorously sought to convince the jury that the other alone had killed him. Ibid.
In finding reversible error in the trial court's refusal to sever the trials, the Supreme Court of Connecticut explained:

*417 When, as in this case, the jury can reasonably accept the core of the defense offered by either defendant only if it rejects the core of the defense offered by his codefendant, the defenses are sufficiently antagonistic to mandate separate trials. [Id. at 1368]
This rationale is in accord with the line of federal cases cited by defendants and establishes the cornerstone of defendant's motion. For example, in United States v. Crawford, 581 F.2d 489 (5 Cir.1978), the Fifth Circuit Court of Appeals held that the denial of a motion for severance was reversible error where two defendants were jointly tried and found guilty of possession of a sawed-off shot gun which had been confiscated from a car which defendant Blanks had been driving and in which codefendant Crawford was a passenger. The Court reasoned:
This record discloses that the defenses asserted by Blanks and Crawford were irreconcilable as well as mutually exclusive. The sole defense of each was the guilt of the other. Blanks incriminated Crawford and exculpated himself at every opportunity. Crawford, on the other hand, attempted to show that he was not culpable because Blanks alone had possession of the firearm. Each was the government's best witness against the other. Each defendant had to confront not only hostile witnesses presented by the government, but also hostile witnesses presented by his co-defendant. Witnesses against each defendant were thus examined by one adversary and cross examined by another adversary. A fair trial was impossible under these inherently prejudicial conditions. [Id. at 491-492]
Three years later the Fifth Circuit had the opportunity to synthesize the evolving case law on the subject of severance and enunciated the standard advanced by defendants. In United States v. Berkowitz, 662 F.2d 1127 (5 Cir.1981) the court considered the appeals of five codefendants all of whom had been jointly tried and convicted of drug-related charges, including conspiracy to distribute, possession with intent to distribute and distribution of cocaine. Two of the defendants argued that the denial of their motions for severance was prejudicial error, since each claimed that his respective role was limited to making an initial introduction and cast the other as the more active participant. Id. at 1132. Their defenses, although convergent in many respects, differed sharply on several crucial details.
*418 In considering the appeal in Berkowitz, the court set forth the standard the Federal District Court must apply in a case claiming antagonistic defenses.
The defense of a defendant reaches a level of antagonism (with respect to the defense of a codefendant) that compels severance of that defendant, if the jury, in order to believe the core of the testimony offered on behalf of that defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant. [Id. at 1134]
In that situation, the codefendants "become the government's best witnesses against each other." Ibid. "Ultimately, the test is whether the defendant received a fair trial." Ibid. Thereupon, the court stated that "neither defendant's defense required the jury to find the other guilty." Ibid. "Nor was it necessary for the jury, in order to believe the core of the testimony offered on behalf of one defendant, to disbelieve testimony offered on behalf of the other defendant." Ibid.
Finally, defendants rely on United States v. Gonzalez, 804 F.2d 691 (11 Cir.1986), wherein the trial court's denial of defendants' motion for severance was found to be error. In Gonzalez the issue was whether the joint trial of two codefendants charged with possession with intent to distribute cocaine found aboard a small cabin cruiser of which Gonzalez was allegedly the owner and Lopez the operator was impermissibly prejudicial to either defendant. The court cited the rule of Berkowitz as controlling and found that "the gist of Lopez's defense was that Gonzalez owned and/or had control of the boat, owned the cocaine and attempted, by a bribe, to hide those facts." Id. at 695. Since in order to believe the testimony offered by Lopez, the jury had to disbelieve Gonzalez when he testified he neither owned the boat, tore up the registration or hid the engine key, the defenses were antagonistic at their "core" and required severance. Ibid.
I find that the defenses asserted herein are more akin to those advanced by the defendants in Berkowitz, supra, where the Fifth Circuit found no error in the trial court's denial of codefendants' motions for severance, than those advanced by *419 defendants in either Vinal, supra, Crawford, supra, or Gonzalez, supra. In Vinal the prosecution's theory was that only one of the defendants shot the victim, specifically precluding a theory of joint culpability. Here the State contends that both Brown and Emm engaged in conduct which resulted in the death of Frank Dimitri, a theory which is premised on the concert of action between the two. The "game" of "cat and mouse" in which the State alleges defendants herein engaged, by necessity, requires more than one participant.
Crawford and Gonzalez both involved possessory offenses wherein there was no claim of joint possession. The defenses asserted therein were such that the jury, in order to accept the core of testimony offered on behalf of one, was forced not only to reject the other but to convict as well. They were clearly mutually exclusive. That is not the case here. Upon proper instructions by the court the jury can reasonably weigh the evidence before them and find either of the defendants, neither of the defendants, or both of the defendants guilty.
I find the defenses antagonistic to each other but not necessarily irreconcilable or mutually exclusive. Weighing this against the principles of judicial economy and the right of the State to have a fair trial without the defendant on trial pointing the finger of culpability at an absent codefendant, I find that the motion for severance should be denied.
NOTES
[1] The State has represented to the Court that its use of a police statement given by defendant Brown will not create Bruton and Young problems. See Bruton v. United States, 391 U.S. 132, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and State v. Young, 46 N.J. 152 (1965) (mandating separate trials where effective deletions of a codefendant's confession cannot be made).
[2] It has subsequently been specifically held that where a husband and wife are codefendants, each planning to testify in their own defense, the applicability of the marital privilege mandates separate trials. State v. White, 195 N.J. Super. 457 (Law Div. 1984).