STATE OF CONNECTICUT *v.* JUAN ROBERTO DELAROSA
(6178)

BORDEN, DALY and NORCOTT, Js.

Argued May 12—decision released September 6, 1988

*Patricia J. Leary Campanella* and *Daniel F. Sullivan,* with whom, on the brief, were *Nancy A. Porter* and *Christopher Foster,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John C. Smrigna,* assistant state's attorney, for the appellee (state).

NORCOTT, J. After a trial to a jury, the defendant was found guilty of possession of cocaine with the intent

to sell in violation of General Statutes § 21a-278 (b) and conspiracy in violation of General Statutes § 53a-48.[1] The defendant appeals from the judgment of conviction.

The defendant claims that the trial court erred (1) in denying the defendant his right to a fair trial by its conduct and comments throughout the trial, (2) in denying the defendant's motions to sever his trial from that of his codefendants, (3) in failing to suppress evidence seized in violation of his fourth amendment rights, (4) in denying the defendant's motion for acquittal, (5) in instructing the jury on the elements of conspiracy and on the effect of reputation evidence, (6) in admitting into evidence bags of cocaine as to which the defendant claims the state inadequately established the chain of custody, and (7) in allowing certain expert testimony as to the number of packages which could be produced from the seized contraband. We find error on the first and second issues and remand for a new trial. There is no error on the remaining five issues,[2]

---

[1] General Statutes § 21a-278 (b) provides in pertinent part for criminal penalties for: "(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person . . . ."

General Statutes § 53a-48 provides: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[2] The defendant also claims that the state failed to prove a sufficient chain of custody to warrant the admission of the narcotics into evidence. Because the case will be remanded for a new trial and the state will have to prove a new chain of custody, we will not review this claim at this time. *State v. Peay*, 13 Conn. App. 578, 579, 538 A.2d 708 (1988).

and we will discuss those issues only to the extent necessary to provide guidance to the trial court at the new trial.

The jury could reasonably have found the following facts. On September 22, 1986, Trooper Bruce Whitaker was on patrol for motor vehicle violations on Interstate 95 in the town of Fairfield. At approximately 12:50 p.m., Whitaker stopped a vehicle containing three males for driving too close to another vehicle near exit 19. Whitaker radioed for backup assistance and Trooper Robert Kenney responded. Whitaker then proceeded to request the driver's license and registration. The car was driven by Juan Soto. Hector Baez and the defendant were passengers in the right front seat and right rear seat, respectively.

While Whitaker was questioning the driver, Kenney went to the right side of the stopped vehicle and observed chunks of white powder, later proven to be cocaine, on the floor where the defendant was seated. Kenney was a certified instructor in the field of narcotics.

When Kenney inquired about the chunks of powder, he discovered that the defendant, who Kenney noticed was "fidgety," "nervous" and continually wiping his nose, did not speak English. Soto responded to the officer's questions by stating that he did not know if narcotics were present within the vehicle. After Kenney had ordered the three men out of the car, he noticed a bulge under Baez's shirt. A subsequent pat-down revealed that the bulge was created by a beeper. Further observation of the interior of the automobile revealed a trail of powder leading from the right front floor area to the area of the seat belt recoil receptacle. In this area, Kenney saw "protruding from the opening where the seat belt recoils" a clear plastic baggie containing white powder. Kenney then seized the bag-

gie, placed Baez, Soto and the defendant under arrest and read them their *Miranda* rights. See *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Thereafter, a search of the trunk of the car revealed a grocery bag which contained newspaper that was wrapped around more baggies of white powder which later proved to be cocaine.

At the Westport state police barracks, Soto told Kenney that he worked for a "big guy" in Boston and traveled to New York on drug runs for which he was paid $500 per trip. He further said that the beeper was used to keep in touch with the "big guy." Soto also told the police that he and others made several trips per week to transport cocaine from New York.

## I

We first address the defendant's claim of judicial misconduct. During the defendant's trial, the state produced as a witness Trooper Dennis Coyle who had assisted Kenney with the investigation of Soto's car while it was impounded at the parking lot of the Westport barracks. As a part of its case, the state sought to establish Coyle's experience in dealing with narcotic dealers and users and to have him give an opinion concerning the value of the seized cocaine. The court, after indicating to the state that it had not sufficiently developed Coyle's "experience on the street," sustained a defense objection as to Coyle's opinion of the street value of the seized material.

Following the direct and cross-examinations of Coyle, the court began to question the witness, sua sponte, to "educate" the jury as to the form cocaine takes, its geographical origins, how it is prepared for street sale, how it is purchased, how it is ingested, and its street value. During the court's questioning of Coyle the following colloquy occurred:

"The Court: I only have two questions, Trooper, and that's only because my view is that I know nothing about the case, as the jurors don't and I also concern myself that the jurors, law abiding citizens, have never had cocaine in their possession.

"What is the form that cocaine would take and how does it relate to what we're talking about here, powder, blocks, flake and he's used the word crack? And that apparently, all those things taken together lead one who is uninformed to a confused state. Do you understand what I'm talking about?

"The Witness: Yes sir.

"The Court: What you may know by second nature where the jurors are totally ignorant of?

"The Witness: Yes sir.

"Mr. Schipul [counsel for the defendant]: I object to Your Honor's question.

"The Court: Objection is noted.

"Mr. Schipul: As inflammatory and irrelevant to this inquiry.

"The Court: It's merely educational. It has nothing to do with the ultimate questions in this case.

"Mr. Schipul: The probative value is far outweighed by the prejudicial effect, Your Honor. I'll take an exception.

"The Court: I'll give you an opportunity to cross-examine on my inquiry as I always do.

"Would you tell them?

"The Witness: Cocaine comes packaged from Colombia, primarily, South America. It comes in a block form and it's compressed and it's very flaky. And when it's

used, it's usually cut up finely with a razor blade. It's also, when it comes to this country, it's also mixed with many other white powders to double the value or triple the value depending upon how much other substance you add to it.

"When it comes in block form, it's usually in its pure state, and it tends to flake off of the blocks. It has chips and it's kind of a hard substance. And when cocaine is actually used, it's actually a very fine white powder.

"Now, crack is processed cocaine. It's actually cooked like baking soda. And then it—And all that remains is a very high quality, high grade pure form of cocaine. And crack is smoked. But it's a very hard, small white chunk.

"The Court: And what are the substances that are mixed with cocaine?

"The Witness: (Inaudible) powder. Any kind of white powder, vitamin E could be used. Any kind of white powder primarily. They use anything at all.

"The Court: And how is that used by a consumer?

"The Witness: It's usually mixed with the cocaine. And usually the consumer—it's chopped finely and put into lines. They usually snort it, ingest it through their nose. It can be injected or it would be heated, free based.

"The Court: How would one—If one snorts dry substances, they inhale it through the nostrils, is that correct?

"The Witness: Yes sir.

"Mr. Schipul: Objection, Your Honor. Again, it's irrelevant.

"The Court: I'll give you an opportunity to cross-examine.

"Mr. Schipul: I'll take an exception.

"The Court: And if one does not and utilizes it in the fashion of administering it internally to the vein, how is it so that the needle may do it? It's in a dry state, isn't it?

"Mr. Schipul: Objection, Your Honor. Irrelevant.

"The Court: Right.

"Mr. Rebollo [counsel for Baez]: The same objection, if Your Honor please.

"Mr. Schipul: Exception.

"The Court: Go ahead.

"The Witness: It can be heated, it then becomes a liquid form. And the liquid form is then injected into the vein.

"The Court: And one person buys it for however they are going to use it, in what quantities is it purchased?

"Mr. Schipul: Your Honor, I would object.

"The Court: (continuing) On the street. I'll give you an opportunity to cross-examine.

"Mr. Schipul: Your Honor is placing yourself in the form of a second prosecutor at this point.

"The Court: No, I haven't at all.

"Mr. Schipul: Taking an adversary approach.

"The Court: I'll take care of objections in a minute. I've already prefaced it. It's educational. The jury has no conception, presuming they all abide by the law, they don't have any experience with the subject.

"Mr. Rebollo: Exception.

"The Court: All right.

"The Witness: Cocaine is sold by weight, which a quarter gram would be $25. A half gram would be $50. An entire gram is usually $100 to $125. And it's also purchased by ounces, eighth ounces, quarter ounces, half ounces and then multi ounces, pounds, half pounds, quarter pounds and kilograms.

"The Court: Okay. Any questions on my inquiry?

"Mr. Schipul: Your Honor, I move to strike your questions and the answers as irrelevant and inflammatory and outside the scope of examination.

"The Court: I said I'd be right around to you in a second.

"Mr. Schipul: Thank you, Your Honor."

The defendant's objections and motions to strike this line of judicial questioning were subsequently denied.

The defendant's first claim of error is that the court's sua sponte questioning cast it in the role of an advocate for the state, that its prejudicial effect far outweighed the probative value, that the questioning was irrelevant to the issues in the case and that he was thereby denied his due process right to a fair trial. The state argues that the court's questioning was merely informational, immaterial to the issues before the jury and neither supported nor diminished the credibility of any witness.

Our Supreme Court has recently defined the standards which govern the judge's role at a trial as follows: "Due process of law guarantees a criminal defendant a fair trial before an impartial judge and jury in a neutral atmosphere. U.S. Const., amend. XIV; Conn. Const., art. I § 8; *State* v. *Fernandez,* 198 Conn. 1, 10, 501 A.2d 1195 (1985); *State* v. *Gordon,* 197 Conn. 413, 424D, 504 A.2d 1020 (1985). It is the trial court's responsibility to conduct the trial in the ' "atmosphere

of perfect impartiality which is so much to be desired in a judicial proceeding." ' *State* v. *Fernandez,* supra, 10, quoting *Glasser* v. *United States,* 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *State* v. *Gordon,* supra, 425; *State* v. *Echols,* 170 Conn. 11, 13, 364 A.2d 225 (1975). Particularly in the presence of the jury, which may readily be influenced by a judge's words or conduct, the trial court has an obligation to comport itself in a circumspect and dispassionate manner. *Quercia* v. *United States,* 289 U.S. 466, 470, 53 S. Ct. 698, 77 L. Ed. 1321 (1933); *State* v. *Fernandez,* supra, 12; *Cameron* v. *Cameron,* 187 Conn. 163, 169, 444 A.2d 915 (1982); *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 503, 101 A.2d 500 (1953). The trial court should never assume a position of advocacy, real or apparent, in a case before it, and should avoid any displays of hostility or skepticism toward the defendant's case, or of approbation for the prosecution's. *State* v. *Fernandez,* supra, 12; *State* v. *Bember,* 183 Conn. 394, 402, 439 A.2d 387 (1981); *State* v. *Echols,* supra, 14." *State* v. *Smith,* 200 Conn. 544, 549, 512 A.2d 884 (1986).

As a threshold matter, we recognize that there may be appropriate circumstances when a trial court can exercise its discretionary right to intervene in the examination of a witness. In criminal cases, however, greater restraint in examining witnesses is required. See 81 Am. Jur. 2d, Witnesses § 420; 2 F. Wharton, Criminal Evidence (13th Ed. Torcia) § 407.

In this case, the trial court itself recognized that its questioning had "nothing to do with the ultimate questions in this case." The trial court's examination of Coyle was truly gratuitous. The questioning did nothing to clarify any previously given testimony, it did not bear directly on Coyle's credibility, and it bore no relevance to any witness' version of the facts in the case. See *State* v. *Smith,* supra, 550.

The state contends, however, that while the court's examination of Coyle might have been inappropriate and imprudent, it did not constitute reversible error. We disagree. Irrelevance alone is not the only damning aspect of this questioning. In the context of this criminal case, the court's expressed desire to "educate" the jury was an exercise fraught with peril.

During the examination of Coyle, the trial court elicited testimony regarding the origins of cocaine trafficking or the so-called Colombian connection, a graphic description of the manner in which the drug is ingested into the body, and information on the quantities and relevant costs available to a prospective cocaine purchaser. We fail to see how, against the background of a rather simple factual scenario put forth by the state, such questioning can be regarded as anything but inflammatory and prejudicial, the nature of which clearly outweighed any probative value.

While it is impossible to ascertain precisely what effect the trial court's questioning had on the jury, it is clear to us that the court's sua sponte examination of Coyle exceeded the parameters of acceptability. The trial court here crossed the fine line between being an "automaton" or "advocate"; see *People* v. *Yut Wai Tom*, 53 N.Y.2d 44, 56, 422 N.E.2d 556, 439 N.Y.S.2d 896 (1981); and entered the realm of advocacy. Given the sensitivity and publicity that surrounds the problem of drugs in our society today, it is not difficult to conclude that the court's questioning of Coyle evinced not merely an educational process for the jury but an overall atmosphere indicative of judicial condemnation of the drug scene in which the defendant was alleged to be involved. An indication of judicial condemnation of drugs and drug use is appropriate at sentencing, not during trial. " 'Interrogation of witnesses tends to assimilate the court's role with the advocate's, and may tread over the line separating the provinces of judge

and jury. . . . There is the risk that the questioning [of witnesses] may bear "the seeds of tilting the balance against the accused" and place "the judge in the eyes of some jurors, on the side of the prosecution." ' *United States* v. *Barbour,* 420 F.2d 1319, 1321 (D.C. Cir. 1969)." *State* v. *Fernandez,* supra, 12. "Judicial conduct that takes 'on the aspect of advocacy' must be avoided." Id., 16, quoting *Blunt* v. *United States,* 244 F.2d 355, 365 (D.C. Cir. 1957) (Bazelon, J.).

We conclude that the fine line separating permissible and impermissible judicial conduct has been crossed in this case. The trial court's examination of Coyle resulted in prejudice to the defendant in that it denied him his constitutional right to a fair trial.[3] A new trial is required.

## II

The defendant's next claim is that the trial court erred when it denied his repeated motions to sever his trial from that of his codefendants.

"The rules that govern motions for separate trials are well established in this state. When two or more criminal defendants are scheduled to be tried together and one or more moves for severance, separate trials 'will be ordered where the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded.' " (Citations omitted.) *State* v. *Vinal,* 198 Conn. 644, 648, 504 A.2d 1364 (1986).

---

[3] We note that the trial court's instructions to the jury contained general, standard language regarding the manner in which the jury was to consider judicial comments on the evidence during the trial. We do not find, however, that the court's instruction cured the infirmity of judicial misconduct in this case.

It is axiomatic that a defendant cannot successfully claim that his rights were prejudiced merely because the joint trial was less advantageous to him than separate trials. Id. Because the trial court enjoys a wide discretion in ruling on motions to sever, we will reverse only where there has been an abuse of discretion that prejudices the rights of the defendant. Id., 649.

The defendant contends that the defenses of his two codefendants were fundamentally antagonistic to his case, and, therefore, the trial court should have severed the trial of each defendant.[4] "To decide whether severance was necessary, we must scrutinize the strategies employed by each defendant at trial and determine, in light of the trial court's ongoing duty to monitor the fairness of the joint trial, whether conflict between the defendants tainted the proceeding." Id.

In this case, each of the defendants claimed not to have possessed the narcotics that were found in the automobile. In the course of presenting their defenses, however, each of the defendant's two codefendants adduced substantial evidence linking the defendant to the narcotics. Counsel for Baez adduced evidence from Kenney that when Kenney approached the car the defendant appeared "nervous and fidgety." Soto's counsel elicited testimony from the officer that he saw the defendant continually wipe his nose. Moreover, when Soto's counsel sought to inquire of Kenney why the cocaine found on the floor of the back seat was in flakes and not in chunk form, he phrased the question as "[s]o, if someone in the back seat stamped on it, that would do it too?"

---

[4] The defendant claims alternatively that the trial court should have granted his motions for severance because at the joint trial the state introduced the confession of one of his codefendants into evidence and thereby violated the defendant's sixth amendment right to confrontation. See *Bruton* v. *United States,* 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). Our holding on the issue of antagonism between the defendants obviates the need for us to consider this claim.

These facts, which were not adduced by the state, were significant in allowing the jury to convict the defendant of the crimes with which he was charged. As our Supreme Court noted in *State* v. *Watson,* 165 Conn. 577, 596, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974), the mere presence of a person in an automobile where an illegal substance is found is not sufficient evidence to support an inference that the person possessed the narcotics. There must be other indicia of ownership. Id. In this case, the testimony adduced by the other defendants provided evidence of a criminal link between the defendant and the narcotics found in the car. Accordingly, this record demonstrates that the defenses raised by the defendant's two codefendants were antagonistic to the defendant who claimed to have been an innocent passenger. It also demonstrates that the defendant was substantially prejudiced by the court's denial of his motion to sever. The defendant must be afforded a separate trial on remand.

## III

We next turn to the defendant's claim that the trial court erred in failing to suppress evidence seized in violation of his fourth amendment rights. Our simple response to this claim is that the defendant has failed to establish that he is entitled to challenge the search of Soto's vehicle and the seizure of the cocaine found therein.

" 'Fourth amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.' " *State* v. *Morrill,* 197 Conn. 507, 540, 498 A.2d 76 (1985), quoting *Alderman* v. *United States,* 394 U.S. 165, 174, 89 S. Ct. 961, 22 L. Ed. 2d 176, reh. denied sub nom., *Ivanov* v. *U.S.,* 394 U.S. 939, 89 S. Ct. 1177, 22 L. Ed. 2d 475 (1969). At a suppression hearing, a defendant must sustain the

burden of demonstrating a legitimate expectation of privacy in the area searched, "the necessary predicate to his claim of a violation of his fourth amendment rights." *State* v. *Morrill,* supra, 542.

A passenger in a motor vehicle, who fails to demonstrate a possessory interest in the car itself or in any of the seized evidence, has no reasonable expectation of privacy in the area of the vehicle searched, and thus, he is precluded from contesting the validity of the search. *State* v. *Manson,* 13 Conn. App. 220, 223, 535 A.2d 829 (1988).

In the present case, the defendant claims he was an innocent passenger. Rather than claim any possessory interest in the bag of drugs, he wholly disclaims any acknowledgment of their existence. His claim, however, is that he, having been charged with a possessory crime, has a right to challenge the search. This is no longer the law. *United States* v. *Salvucci,* 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980); *State* v. *Altrui,* 188 Conn. 161, 179, 448 A.2d 837 (1982); *State* v. *Daay,* 5 Conn. App. 496, 499, 500 A.2d 248 (1985). Accordingly, because the defendant cannot establish any reasonable expectation of privacy in the area searched in the automobile, we need not reach the fourth amendment claims he raises with respect to the seized evidence.

## IV

The defendant's next claim of error is that there was insufficient evidence to support the jury's guilty verdicts for the crimes with which he was charged. The essence of the claim is that the state presented insufficient evidence to link the defendant to the cocaine or to any conspiracy to distribute it. The defendant argues that the state's case against him was based purely on inference without positive evidence to support such inference. We do not agree.

At trial, the court denied two motions for acquittal on both counts, to which the defendant duly took exception. The defendant claims that the court erred in denying his motions for acquittal. Pursuant to Practice Book § 883, a motion for judgment of acquittal must be granted as to any offense for which the evidence "would not reasonably permit a finding of guilty."

When a claim on appeal challenges the sufficiency of the evidence we first review the evidence in the light most favorable to sustaining the jury's verdict; next we determine, whether, upon the facts established and the inferences reasonably drawn therefrom, "the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Simino,* 200 Conn. 113, 117, 509 A.2d 1039 (1986); *State* v. *Summerville,* 13 Conn. App. 175, 184–85, 535 A.2d 818 (1988). Our inquiry focuses on whether " 'a rational trier of fact could find guilt proven beyond a reasonable doubt.' " *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 317–18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

" ' "To establish the crime of conspiracy under Section 53a-48 of the General Statutes, the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed." *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091 (1975). The conspiracy may be proved through circumstantial evidence. *State* v. *Hayes,* 127 Conn. 543, 554, 18 A.2d 895 (1941).' *State* v. *DeMatteo,* 186 Conn. 696, 707, 443 A.2d 915 (1982)." *State* v. *Rouleau,* 204 Conn. 240, 258, 528 A.2d 343 (1987).

We conclude that the state presented sufficient evidence upon which the jury could reasonably have found the defendant guilty of conspiracy beyond a reasonable doubt. The defendant was a passenger in a car in which a large quantity of cocaine was found. Some of the cocaine was discovered in plain view on the vehicle floor in close proximity to the defendant. The testimony at trial further revealed that the vehicle in which the defendant was riding was being employed in a drug trafficking venture from New York to Boston in furtherance of a plan conducted by a "big guy" in Boston.

With respect to the defendant's illegal possession of the narcotics, it is clear that "the state must prove, not only that the defendant, 'exercised dominion and control over the substance, [but that he] had knowledge of its presence, and had knowledge of its narcotic character.' *State* v. *Williams,* 169 Conn. 322, 335, 363 A.2d 114 (1975)." *State* v. *Parent,* 8 Conn. App. 469, 473, 513 A.2d 725 (1986). Furthermore, when the drugs are found in a car with more than one passenger, the mere presence of a person in the car is not sufficient to support an inference that he possessed the drugs. *State* v. *Watson,* supra, 596. There must be other indicia of ownership. Id. In this case, there was sufficient other indicia of ownership. The drugs were found on the back floor of the car near the defendant's feet, and the defendant was seen continually wiping his nose and appeared fidgety and nervous. We conclude that the defendant was not entitled to a judgment of acquittal.

## V

The defendant next claims that the trial court erred in its instructions to the jury.[5] Specifically, the defend-

[5] The defendant also claims that certain of the trial court's comments constituted reversible error. We will not review these claims at this time, however, because the defendant will be afforded a new trial, and these issues are not likely to recur. *State* v. *Peay,* 13 Conn. App. 578, 579, 538 A.2d 708 (1988).

ant claims that the court erred by not giving the entire text of his requested charge on reputation evidence.

We begin our analysis of this claim by noting that " '[w]hen a proper request is filed pursuant to Practice Book § 852 or exception is taken pursuant to § 854 the test is whether the charge properly covered the substance of the written request or properly and adequately covered the specific subject matter of the exception.' *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982). ' "[T]he charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." *State* v. *Bell,* 153 Conn. 540, 544, 219 A.2d 218 (1966).' *State* v. *Williams,* 182 Conn. 262, 269, 438 A.2d 80 (1980). ' "The trial court is not under a duty in a criminal proceeding to charge in the identical language requested if its charge is accurate, adequate and, in substance, properly includes material portions of the defendant's request; its responsibility is performed when it gives instructions to the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration, under the offenses charged and upon the evidence, and when its instructions are suited to their guidance in the determination of those issues." *State* v. *Harden,* 175 Conn. 315, 322–23, 398 A.2d 1169 (1978).' *State* v. *Harrell,* 199 Conn. 255, 269, 506 A.2d 1041 (1986); see also, *State* v. *Fuller,* 199 Conn. 273, 279, 506 A.2d 556 (1986); *State* v. *Timmons,* 7 Conn. App. 457, 463, 509 A.2d 64 (1986)." *State* v. *Delgado,* 13 Conn. App. 139, 144–45, 535 A.2d 371 (1987).

In this case, the court gave most of the defendant's requested instruction on reputation evidence. The court instructed the jury it was to consider the defendant's reputation for truthfulness in the community.[6] The

---

[6] The trial court properly limited its instructions to the defendant's reputation for truthfulness because that was the only such evidence produced

court further instructed the jury that, on a doubtful question, good reputation alone might be sufficient to raise a reasonable doubt as to the guilt of the accused. We find that these instructions adequately covered the substance of the defendant's request and that the defendant was not entitled to further instructions on the issue.

## VI

The defendant's final claim, namely, that the trial court erred in permitting the state toxicologist, Charles Reading, to testify as to the number of "street packets" which could be obtained from the seized cocaine, also requires little discussion.

Reading first testified that he had seen cocaine packaged for street sale in his laboratory and that it usually amounted to 100 to 200 milligrams per package. He then opined that 7500 packages at 100 milligrams each with a 25 percent purity rating could have been packaged for street sale from the seized material. The defendant objected to Reading's opinion, claiming that it was prejudicial, lacked foundation and was speculative. On appeal, however, he has shifted his claim to a challenge to Reading's expertise to give the aforementioned opinion. Although ordinarily such a shift would preclude review of this claim, we will review it here because it is likely to arise in the retrial.

We note that the qualifications of Reading are well documented in the transcript, and, at the outset of his testimony, the defendant stipulated to those qualifica-

at trial. The trial court does not have an obligation to instruct the jury on the defendant's good reputation in general, even if so requested, if such evidence is not produced at trial. See *State* v. *Timmons,* 7 Conn. App. 457, 467, 509 A.2d 64, cert. granted, 201 Conn. 802, 513 A.2d 697 (1986). " 'A court does not err in declining to charge the jury on an issue not supported by the evidence, particularly where such charge might unfairly prejudice the jury.' *Bonner* v. *Winter,* 175 Conn. 41, 47, 392 A.2d 436 (1978)." Id.

tions. The defendant claims, however, that notwithstanding his expertise, Reading was unqualified to testify about the packaging and resale of drugs that he has analyzed. We disagree.

"The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions." (Citations omitted.) *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986). On appellate review we will not disturb the exercise of such discretion unless it has been abused or "the error is clear and involves a misconception of the law." *State* v. *Douglas,* 203 Conn. 445, 452, 525 A.2d 101 (1987).

In the present case we are not faced with a situation in which the lack of qualification of Reading, the expert witness, is claimed. "As the witness qualified as an expert, any objection to his testimony would go to its weight rather than to its admissibility." (Citations omitted.) *State* v. *Avila,* 166 Conn. 569, 576, 353 A.2d 776 (1974). Here, the toxicologist had fifteen years of duty in the state toxicological services laboratory; chief among his duties was the analysis of contraband items seized by state law enforcement agencies. Reading's expert testimony regarding the purity of the cocaine and the number of individual retail packages that could be produced from it fell well within his background and expertise. The trial court did not abuse its discretion in ruling that such testimony was admissible.

There is error, the judgment is set aside and the case is remanded for a new trial in accordance with this opinion.

In this opinion the other judges concurred.