## STATE OF CONNECTICUT *v.* KYLE BAINES
### (AC 19457)

O'Connell, C. J., and Foti and Vertefeuille, Js.

Argued October 28, 1999—officially released January 25, 2000

*Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Bruce R. Lockwood,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* senior assistant state's attorney, for the appellee (state).

FOTI, J. The defendant, Kyle Baines, appeals from the judgment of conviction, rendered after a jury trial, of murder as an accessory in violation of General Statutes §§ 53a-54a (a) and 53a-8, conspiracy to commit murder in violation of General Statutes §§ 53-54a (a) and 53a-48 (a) and carrying a pistol without a permit in violation of General Statutes § 29-35. On appeal, the defendant claims that the trial court improperly (1) denied his motion to sever his trial from that of his codefendant, Jamal Jenkins, (2) refused to admit certain evidence and (3) instructed the jury on reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of August 13, 1996, Laura Woodtke, Kirk McKenzie and the victim, Aubrey Rodney, were sitting outside at 60 Farren Avenue in New Haven, where Woodtke resided. They were approached by Robert Spearman, who said, "[You have] ten minutes to vacate the premises or we're going to kill you." Spearman was joined by Jenkins, Tyrone Kindred, the defendant and another unidentified male. The five men formed a semicircle and, after some conversation, the defendant pulled a wool mask over his face. The five men took out guns at Jenkins' instruction. As Woodtke and the victim ran, approximately five shots were fired, with one bullet entering the victim's back and causing his death.

Although all five were armed, only Jenkins and the defendant fired their weapons. Jenkins shot the victim in the back, and the defendant fired at the fleeing McKenzie. The two fired five or six shots between them. The incident was observed by a witness, Joy Terry, from a second floor window in her apartment.

## I

The defendant first claims that the trial court improperly denied his motion to sever his trial from that of his codefendant, Jenkins. We disagree.

Certain additional facts are necessary for the resolution of this issue. At the time of Jenkins' arrest on October 7, 1996, the defendant and Kindred had already been placed under arrest. They were arrested on August 15, 1996. Spearman, however, was not arrested until December 20, 1996. After being arrested, Jenkins stated to the police that "there is one more person you should get."

The defendant argued before the trial court that the statement incriminated him by implication because it meant that the right people had been arrested and the police needed to get one more person. The state argued that the statement neither named the defendant, nor was it demonstrated that, at the time the statement was made, Jenkins knew that the defendant had been arrested. The trial court denied the defendant's motion prior to trial and again at trial.

The defendant claims that his motion to sever should have been granted because Jenkins' statement effectively inculpated him in the crime, and the denial of the motion violated his confrontation rights pursuant to *Bruton* v. *United States*, 391 U.S. 123, 137, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968).

"[W]hether to consolidate or sever the trials of defendants involved in the same criminal incident lies within the sound discretion of the trial court. . . . Ordinarily justice is better subserved where parties are tried together. . . . Joint trials of persons jointly indicted or informed against are the rule, and separate trials the exception resting in the discretion of the court. . . . A separate trial will be ordered where the defenses of the

accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. . . . [T]he phrase prejudicial to the rights of the [accused] means something more than that a joint trial will probably be less advantageous to the accused than separate trials. . . . *State* v. *White*, 229 Conn. 125, 158–59, 640 A.2d 572 (1994); accord *State* v. *Walton*, 227 Conn. 32, 56, 630 A.2d 990 (1993); *State* v. *Smith*, 201 Conn. 659, 668–69, 519 A.2d 26 (1986); see also *State* v. *Vinal*, 198 Conn. 644, 648, 504 A.2d 1364 (1986).

"The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded. *State* v. *White*, supra, 229 Conn. 158. [W]e will reverse a trial court's ruling on joinder only where the trial court commits an abuse of discretion that results in manifest prejudice to one or more of the defendants. *State* v. *Vinal*, supra, 198 Conn. 649. The discretion of the court is necessarily exercised before the trial begins and with reference to the situation as it then appears to the court. *State* v. *Smith*, supra, 201 Conn. 669; accord *State* v. *McCarthy*, 130 Conn. 101, 103, 31 A.2d 921 (1943)." (Internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 620, 737 A.2d 404 (1999).

We review the trial court's decision to deny the defendant's motion for severance based on the evidence before the court at that time. Id. Even if we conclude, however, that the trial court did not abuse its discretion in denying the defendant's motion, we must also consider whether, as the trial developed, the joinder resulted in substantial injustice to the defendant. Id., 623.

"A defendant is deprived of his rights under the confrontation clause when the nontestifying codefendant's

confession, which *expressly implicates* him as a partici-
pant in the crime, is introduced at their joint trial, even
if the jury is instructed to consider that confession only
against the codefendant. *Bruton* v. *United States*,
[supra, 391 U.S. 137]. . . .

"*Bruton* is limited to those confessions that are
incriminating on their face in that they 'expressly impli-
cate' the defendant in the actual commission of the
crime. *Richardson* v. *Marsh*, [481 U.S. 200, 204–10, 107
S. Ct. 1702, 95 L. Ed. 2d 176 (1987)] . . . ." (Citations
omitted; emphasis in original.) *State* v. *Edwards*, 39
Conn. App. 242, 245, 665 A.2d 611, cert. denied, 235
Conn. 924, 666 A.2d 1186 (1995).

While a case may not fall within the ambit of *Bruton*
and not be violative of the confrontation clause if a
nontestifying codefendant's confession is admitted with
a proper limiting instruction when the confession is
redacted to eliminate the defendant's name and any
reference to his or her existence; *Richardson* v. *Marsh*,
supra, 481 U.S. 204–10; if the redacted confession refers
directly to the existence of the nonconfessing defen-
dant, or "replaces a defendant's name with an obvious
indication of deletion, such as a blank space, the word
'deleted' or a similar symbol, [it would still fall] within
*Bruton*'s protective rule." *Gray* v. *Maryland*, 523 U.S.
185, 192, 118 S. Ct. 1151, 140 L. Ed. 2d 294 (1998).

We conclude that the facts of this case do not demon-
strate that a *Bruton* violation occurred. The statement
by Jenkins neither named nor incriminated the defen-
dant directly. While it may be argued that the statement
inferentially incriminated someone other than Jenkins,
only by linking the statement to other evidence could
the jury infer that person to be the defendant. Our
Supreme Court has limited the application of *Bruton*,
stating that "extrajudicial statements or confessions by
one defendant which do not directly inculpate the code-

fendant are not within the prohibition of *Bruton* . . . and are admissible." *State* v. *Cosgrove*, 181 Conn. 562, 591, 436 A.2d 33 (1980).

The trial court specifically instructed the jury that it could not use the statement as evidence against the defendant, but could only use the statement against the person who made it, Jenkins. The jury is presumed to follow the court's instructions. *State* v. *Griffin*, 175 Conn. 155, 160, 397 A.2d 89 (1978); accord *State* v. *Ortiz*, 217 Conn. 648, 669, 588 A.2d 127 (1991). Accordingly, the defendant did not suffer substantial prejudice by the admission of the codefendant's statement so as to require a separate trial.

It is the defendant's burden on appeal to show that a joint trial caused "substantial injustice." *State* v. *White*, supra, 229 Conn. 160–62. The record before us fails to show that the jury could not follow the trial court's cautionary instructions and that the defendant was actually prejudiced substantially by the admission of Jenkins' statement.

We reject the defendant's claim that he was substantially prejudiced by the joint trial.

II

The defendant next claims that the trial court improperly excluded evidence as to the whereabouts of the state's witness, Terry, at the time of the shooting. The defendant alleges that this action by the trial court, together with the denial of an offer of proof, violated his constitutional right to present a defense. The state argues that because the defendant did not join in Jenkins' offer of proof or his codefendant's objections concerning the proffer and admissibility of the evidence, he is not entitled to adopt his codefendant's appellate claims. In the alternative, the state argues that the trial court's actions were proper.

This claim was fully addressed and rejected by this court in the companion case, *State* v. *Jenkins*, 56 Conn. App. 450, 453–57, 743 A.2d 660 (2000). That decision is dispositive of this claim. We conclude that the defendant's claim is without merit.

## III

The defendant finally claims that the trial court improperly instructed the jury on reasonable doubt. The defendant acknowledges that he submitted a request to charge containing similar language to the charge as given by the trial court and that no exception was noted to the charge as given. He claims that he is entitled to review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), and the plain error doctrine. Practice Book § 60-5.

The defendant claims that the court's instruction on reasonable doubt was improper because it characterizd a reasonable doubt as "a doubt as would cause reasonable men and women to hesitate to act upon it, in matters of importance," and "a real doubt," and "not a doubt suggested by counsel, which is not warranted by the evidence." He alleges that the instruction violated his rights to due process as guaranteed by the federal and state constitutions.

We will review this claim because the record is adequate for review and the defendant alleges the violation of a fundamental constitutional right. See *State* v. *Morant*, 242 Conn. 666, 687, 701 A.2d 1 (1997). We conclude, however, that the alleged constitutional violations did not clearly exist and did not deprive the defendant of a fair trial.

Our Supreme Court has upheld the use of the same or similar language relative to "hesitate to act"; id., 688; and "a real doubt." *State* v. *Hines*, 243 Conn. 796, 816–20, 709 A.2d 522 (1998). The instruction concerning

"not a doubt suggested by counsel, which is not warranted by the evidence," or similar language, has been determined not to constitute reversible error. See *State* v. *Delvalle*, 250 Conn. 466, 473–74, 736 A.2d 125 (1999); *State* v. *Cansler*, 54 Conn. App. 819, 834, 738 A.2d 1095 (1999); *State* v. *Gonda*, 53 Conn. App. 842, 732 A.2d 793, cert. denied, 250 Conn. 919, 738 A.2d 660 (1999).

We conclude, on the basis of the record before us, that the alleged constitutional violations did not clearly exist and that the defendant was not deprived of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.