STATE OF CONNECTICUT *v.* JAMAL JENKINS
(AC 19458)

O'Connell, C. J., and Foti and Mihalakos, Js.

Argued October 28, 1999—officially released January 25, 2000

*Kenneth Rosenthal*, special public defender, for the appellant (defendant).

*Bruce R. Lockwood*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Jamal Jenkins, appeals from the judgment of conviction, rendered after a jury trial, of the crimes of murder in violation of General Statutes § 53a-54a (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a), carrying a pistol without a permit in violation of General Statutes § 29-35, and criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (a) (1). The defendant claims that the trial court improperly (1) precluded defense evidence contesting the whereabouts of an eyewitness, (2) barred him from offering proof regarding evidence of the location of one of the state's two eyewitnesses and (3) allowed evidence against him with respect to coconspirators. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 13, 1996, the victim, Aubrey Rodney, was talking with Laura Woodtke and Kirk McKenzie outside Woodtke's apartment at 60 Farren Avenue in New Haven. Shortly after 9:20 p.m., they were approached by Robert Spearman, whom Woodtke had seen before and recognized. Spearman was armed and stated to the three individuals, "[You have] ten minutes to vacate the premises or we're going to kill you."

Almost immediately following this warning, four individuals approached from 69 Farren Avenue, a residence across the street that was a reputed drug house. Among this group were the defendant, to whom Woodtke referred as "Head Honcho," and Kyle Baines and Tyrone Kindred. The defendant reiterated Spearman's threat and stated that the three were on his turf. At the same time, the defendant told the four men who were with him to draw their guns. Woodtke turned and ran toward her apartment. While she was running with her back to the men, Woodtke heard multiple gunshots. The victim, who was running behind Woodtke, fell on top of her. The victim rose to his feet, stumbled a few feet and fell to the ground. Woodtke looked back at the group of men and saw the defendant standing with his right arm extended as if he had just shot the victim. The other men still had their weapons at their sides.

While Woodtke ran inside and called the police, the five men fled. McKenzie also fled. Within a few minutes of being shot, the victim died from internal bleeding. When the police arrived, Woodtke gave them a detailed description of the suspects and subsequently identified the defendant, Baines, Kindred and Spearman from two arrays of photographs. Woodtke also made in-court identifications of the defendant and codefendant Baines.

Joy Terry saw the shooting from a second floor window in her apartment. She heard the defendant ordering

Woodtke to leave and witnessed the defendant shoot the victim in the back as the victim was fleeing. She heard five or six gunshots and recognized the defendant because she had purchased drugs from him at a nearby street. Terry gave a statement to police on the day following the shooting. She also picked the defendant and some of his accomplices out of a photographic array.

The police did not recover the weapons from the crime scene, but they did recover four nine millimeter cartridge casings and one nine millimeter bullet at the scene of the shooting.

I

The defendant first claims that the trial court wrongfully excluded defense evidence concerning the whereabouts of Terry. We disagree.

After the state rested, the defendant sought to recall Woodtke to question her as to whether she had seen Terry outside, at a location from which she could not have seen the shooting, immediately prior to the shooting. The court allowed Woodtke to be recalled outside the presence of the jury, finding that evidence of Terry's whereabouts at the time of the shooting was relevant. Woodtke testified that she had not seen "Joy Terry," a black woman, around the time of the shooting but had seen a white woman named "Terry." The defense then requested permission to call defense investigator T.W. O'Donnell to testify about Woodtke's statements to him concerning Terry. O'Donnell had taken statements from Woodtke in the course of his investigation. The trial court refused to allow O'Donnell to testify, finding that his testimony about Woodtke's references to Terry would be confusing to the jury and was not relevant.

The court acted within its discretion in denying the admission of the defendant's proffered evidence. The

admission of evidence is highly discretionary, and the court's decision is entitled to great deference. *State* v. *Berger*, 249 Conn. 218, 229, 733 A.2d 156 (1999); *State* v. *Grant*, 51 Conn. App. 824, 826, 725 A.2d 367, cert. denied, 248 Conn. 916, 734 A.2d 568 (1999). "Evidence is relevant if it has a tendency to establish the existence of a material fact." *State* v. *Kelly*, 208 Conn. 365, 376, 545 A.2d 1048 (1988). Furthermore, the proffered evidence about Woodtke's testimony was not sufficient to contradict the testimony of Terry that she saw the shooting from inside her apartment. This evidence was offered to impeach Terry and was found by the court to lack relevance. See *State* v. *Smith*, 49 Conn. App. 252, 258–59, 714 A.2d 1243, cert. denied, 247 Conn. 914, 722 A.2d 809 (1998) (witness may be impeached by introduction of contradictory evidence from other witnesses if evidence is contradictory and does not relate to collateral matter). Since the court found that the defendant did not meet his burden of demonstrating that the evidence was relevant, it properly excluded the evidence.

The defendant next claims that by excluding the proffered evidence, the court prevented him from exercising his constitutional right to present a defense. We are not persuaded by this argument. The defendant seeks *Golding* review as to this issue.[1] We conclude that the defendant's claim fails the second prong of review pursuant to *Golding*. The claim is not reviewable under *Golding* because it is not of constitutional magnitude. The defendant was not prohibited from offering a

---

[1] Under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), a defendant can prevail on an unpreserved claim of constitutional error only if all of the following requirements are satisfied: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

defense. Rather, the defendant's evidence was not allowed pursuant to the court's discretion and the rules of evidence and procedure.

The constitution does not require that a defendant be permitted to present every piece of evidence he wants. *State* v. *Shabazz*, 246 Conn. 746, 752–53 n.4, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999). The court retains the power to rule on the admissibility of the proffered evidence pursuant to evidentiary standards; hence, the question is evidentiary and not constitutional. Id.

It is well settled that a party "must comply with established rules of procedure and evidence designed to assure both fairness and reliability . . . ." (Internal quotation marks omitted.) *State* v. *Kelly*, supra, 208 Conn. 376. The court allowed the defendant to recall Woodtke outside the presence of the jury to determine whether her testimony would contain any information that could impeach Terry's eyewitness testimony. The court's ruling as to admissibility of evidence is not one of constitutional magnitude. "Relevancy is an evidentiary question and '[e]very evidentiary ruling which denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error.' " *State* v. *Harris*, 48 Conn. App. 717, 726 n.12, 711 A.2d 769, cert. denied, 245 Conn. 922, 717 A.2d 238 (1998). The defendant claims that this evidence was central to his case, yet his trial counsel admitted that she forgot to raise this issue when Woodtke originally testified. Additionally, the defendant was permitted to present other evidence relating to the reliability of Terry's identifications. The defendant's claim is not of constitutional magnitude alleging the violation of a fundamental right and we, therefore, decline to review it.

## II

The defendant claims next that the trial court wrongfully precluded him from presenting an offer of proof

regarding evidence of the location of Terry, one of the state's eyewitnesses. We disagree.

The state was given a copy of the report of the interview with Woodtke by the investigator, O'Donnell. After reviewing the report, the state argued that it was identical to Woodtke's testimony. A portion of the report was marked for identification, and the court stated that the exhibit was "a report, or a portion of the report that the defense inspector would testify to." Although the defendant wanted the investigator to testify as to whether Woodtke had said "Joy Terry" even though the report stated that she had said "Terry," the court did not allow that inquiry.

A proper offer of proof serves three purposes. First, it informs the court of the legal theory under which the evidence is admissible. Second, it should inform the trial judge of the specific nature of the evidence so that the court can judge its admissibility. Third, it creates a record for appellate review. *State* v. *Zoravali*, 34 Conn. App. 428, 433, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994). The decision not to allow the investigator to testify was proper because the three purposes behind the defendant's offer of proof had been met. First, the defendant was permitted to argue that Woodtke's testimony concerning the presence of another "Terry" during the shooting was admissible on the issue of Terry's location at that time. Second, Woodtke's testimony, along with O'Donnell's report, sufficiently informed the court of the specific nature of the proffered evidence so that it could rule on its admissibility. Third, an adequate record had been created because the specific nature and the relevance of the evidence was readily discernible. The court properly refused to allow O'Donnell to testify as part of the defendant's offer of proof because the purposes behind making the offer of proof already had been served.

Even if we held that the investigator's testimony was improperly excluded, its exclusion was harmless because the testimony would have been cumulative. See *State* v. *Wearing*, 46 Conn. App. 741, 756, 701 A.2d 41, cert. denied, 243 Conn. 937, 702 A.2d 645 (1997) (factor to be considered in determining whether improper ruling on evidence harmless is whether testimony was cumulative). Accordingly, we reject the defendant's claim that the court's ruling that the defendant could not present an offer of proof regarding evidence was harmful.

## III

The defendant's final claim is that the court improperly allowed evidence against the defendant with respect to coconspirators. We disagree.

The state elicited testimony from several New Haven police officers concerning their contact with codefendant Baines and with Kindred and Spearman, whose trials had been severed from that of the defendant and Baines. The purpose of this evidence was to link the defendant with the various members of the group involved in the shooting and to support the eyewitnesses' statements that the defendant and his coconspirators "hung out" at 69 Farren Avenue. At trial, the state presented the proposed testimony of each officer outside the presence of the jury. The defendant's objection to this evidence was overruled by the trial court.

The defendant was charged with the crime of conspiracy to commit murder in addition to the other offenses. Therefore, it was incumbent upon the state to establish a connection between the defendant and his alleged coconspirators. This court has permitted the introduction of evidence of acts of prior misconduct to establish a relationship between a defendant and his alleged coconspirators where one of the charges against the defendant was a conspiracy charge. *State* v. *Jones*, 44

Conn. App. 338, 345–46, 689 A.2d 517, cert. denied, 240 Conn. 929, 693 A.2d 301 (1997) (evidence of drug dealing permitted to show relationship among alleged coconspirators where defendant charged with conspiracy to commit murder); *State* v. *Harris*, 43 Conn. App. 830, 832–37, 687 A.2d 544 (1996) (evidence of existence of drug operation permitted to show relationship among various individuals where charge is conspiracy to commit murder). The evidence in this case was relevant because it showed various instances of contact between the alleged coconspirators and supported the identification testimony of the eyewitnesses. It is not enough for the defendant to claim that the events in testimony did not all directly involve him. A trial court is not required to find, as a prerequisite to admissibility, that evidence is conclusively linked to other evidence. *State* v. *Thomas*, 205 Conn. 279, 283, 533 A.2d 553 (1987).

The defendant's final claim is that the trial court did not weigh the probative value of the evidence against its prejudicial effect. We find this claim to be without merit. The trial court heard the proposed evidence outside the presence of the jury and restricted the testimony to limit any unnecessary prejudice. A specific reference to prejudice is not necessary where the conduct of the court demonstrates that it considered this factor. *State* v. *Moore*, 49 Conn. App. 13, 22 n.8, 713 A.2d 859 (1998). The trial court clearly acted to eliminate any unnecessary prejudice in its consideration of the coconspirator evidence. For the foregoing reasons, we conclude that the trial court properly admitted the coconspirator evidence.

The judgment is affirmed.

In this opinion the other judges concurred.